Argued and submitted November 15, 2012, affirmed July 10, 2013

In the Matter of the Guardianship and Conservatorship of
Darline Marie Stafford, a Protected Person.

Steven LEHMAN,
Trustee,
*Appellant,*

*v.*

Daniel BIELENBERG,
*Respondent.*

Marion County Circuit Court
11C15524; A149985

307 P3d 478

James F. Little argued the cause and filed the briefs for appellant.

Mary Kim Wood argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

This appeal relates to disputes over the care of Darline Stafford, who was in her early 80s at the time of these proceedings, and who is related to both parties to the appeal. Steven Lehman ("trustee"), is Stafford's son-in-law and has served since 2009 as a trustee of a revocable living trust that Stafford and her husband had formed the previous year. In 2011, Daniel Bielenberg ("petitioner"), Stafford's son, petitioned for appointment of a conservator and guardian for Stafford, alleging that she was financially incapable and could not provide for her basic needs. Stafford and trustee objected to the requested appointments. The trial court appointed a court visitor to investigate whether appointment of a conservator and guardian would be appropriate. After conducting an investigation, the court visitor reported that no guardianship or conservatorship was necessary.

During the August 3, 2011, status conference that followed preparation of the court visitor's report, the parties agreed that no conservatorship or guardianship should be established. After a later hearing, the court entered a general judgment of dismissal in which it dismissed the petition and asked both petitioner and trustee to submit attorney-fee petitions for the court's review. The judgment specified that trustee could seek attorney fees for the period before August 3, 2011, and that petitioner could seek attorney fees incurred from that date until the date of judgment. Finally, the judgment stated that fees would be allocated "subsequent to Rule 68 hearing before [the] court." On trustee's appeal from that general judgment of dismissal, we affirm.

Although the parties hotly dispute which family members bear responsibility for the events that precipitated this litigation, the facts pertinent to the issues on appeal are mainly procedural and, except as noted below, are not disputed in any way material to the issues before this court. Stafford and her husband formed a joint revocable living trust in 2008 in which they named trustee as successor trustee. After Stafford's husband died, Stafford amended the trust, establishing herself and trustee as co-trustees. Trustee has served in that capacity continually since 2009. Trustee's wife, Jeanie Lehman (who is Stafford's daughter)

has been Stafford's healthcare representative since 2008 and, since about the same time, has coordinated Stafford's care, sometimes providing services directly.

In May 2011, petitioner filed a petition for appointment of a conservator for Stafford, alleging that she was financially incapable and had assets that required management or protection. Two weeks later, Stafford resigned as co-trustee, leaving trustee as sole trustee of the revocable trust. Stafford then filed an objection to the petition, stating that her living trust contained "substantially all of her property" and asserting that the trust was being effectively administered according to its terms and her wishes.[1] About a week later, Stafford and trustee filed a joint response to the petition and asserted various counterclaims.

In June 2011, the trial court appointed a court visitor to interview witnesses and to prepare a written report for the court. At the same time, petitioner notified the court that he intended to amend the petition to (1) exclude all property in the trust and (2) appoint a guardian, in addition to a conservator. The trial court set a status conference for August 3, but said that, if there ended up being "no recommendation for the appointment of a conservator, everything else is going fine in the current set up, and they follow through and dismiss them [apparently referencing the petitions], we won't have anybody come back at all." In late July, before the court visitor submitted his report, petitioner filed a first amended petition for appointment of a conservator and guardian, alleging that Stafford was financially incapable and was incapacitated with respect to providing for her basic needs. Petitioner acknowledged that the only property that needed management was whatever property was not included in the trust. He also alleged, however, that he did not know which of Stafford's property was in the trust, and he claimed that he had not known about the trust when he filed the original petition.

The court visitor submitted his report on August 3, 2011. The visitor did not recommend appointment of a conservator or a guardian, as he had no concerns for Stafford's

---

[1] Some of Stafford's other children also objected to appointment of a conservator.

well-being. To the contrary, the visitor reported, trustee and Jeanie Lehman were providing "fastidious attention" to Stafford's financial and healthcare issues. The visitor opined that the trust arrangement was appropriate for Stafford at that time.

Also on August 3, Stafford and trustee filed a joint response to the first amended petition. In a counterclaim, styled as a request for "Judicial Intervention in Administration of Trust and Declaratory Judgment," they sought (1) a declaratory judgment that the trust was valid, (2) court approval of hourly rates for trustee, bookkeeping, and caregiver services that trustee and Jeanie Lehman provided to Stafford, and (3) costs, attorney fees, and an enhanced prevailing-party fee.[2]

The parties met with the trial court in chambers that same day and attempted to resolve some aspects of their dispute in light of the court visitor's report that Stafford was being cared for appropriately. As the trial court later recalled, petitioner said that he was "no longer going to go forward with any of that," apparently referencing the petition for conservatorship and guardianship. Accordingly, the parties agreed to set another proceeding to deal solely with the request that Stafford and trustee had made for compensation for trustee and caregiver services, as well as the parties' requests for attorney fees.

That hearing—which turned out, with respect to attorney fees, to be only a preliminary hearing—occurred on September 8, 2011. In a joint hearing memorandum filed that day, Stafford and trustee argued that petitioner had not filed a reply to their counterclaim, that the allegations in the counterclaim must therefore be considered admitted, and that Stafford and trustee consequently were entitled to judgment on the pleadings with respect to the counterclaim. If the trial court declined to enter judgment on that basis, however, Stafford and trustee asserted that

---

[2] In a second counterclaim, labeled an action for abuse of a vulnerable person, trustee and Stafford alleged that petitioner improperly had acquired control of a vehicle from Stafford. However, trustee acknowledged during oral argument in this court that the second counterclaim—involving a dispute over a vehicle—is no longer at issue because it "was worked out" among the parties. Accordingly, we do not address that counterclaim further.

the remaining issues for decision—given the court visitor's recommendation against appointment of a guardian or conservator—were the rates of compensation for the services that trustee and Jeanie Lehman provided to Stafford, the claim for attorney fees under ORS 130.815, and the claim for an enhanced prevailing-party fee. They argued that an attorney-fee award was appropriate because Stafford should not have to bear the cost of defending against the conservatorship and guardianship petition.

At the September hearing, petitioner's counsel asserted that she had filed objections to trustee's and Stafford's claimed attorney fees and, along with petitioner's own petition for attorney fees, had faxed those objections to counsel for trustee and Stafford before hearing. Petitioner's attorney also asserted that she had "countered [the] counterclaims" during the August 3 discussion in chambers, where the parties had determined that the only issue remaining for hearing was "the award of attorney fees, and compensation for the Lehmans." Moreover, she explained, she had not filed a written response to the counterclaim because she had understood from the August in-chambers discussion that the only issue remaining was "the award of attorney fees, and compensation for the Lehmans." The trial court agreed, stating that it had thought that "all we were going to talk about was the attorney fees today."

The trial court then stated that it was dismissing the petition for guardianship, and it asked counsel for Stafford and trustee whether he needed to say anything to preserve a claim. The attorney responded that he was "okay with the dismissal" and agreed that the court should address the question of attorney fees and compensation for trustee and Jeanie Lehman. The court ordered dismissal of the petition for guardianship and conservatorship, and it adopted the court visitor's recommendation to approve the requested rates of compensation for the Lehmans' services to Stafford, finding the proposed compensation "appropriate."

The court proceeded to hear evidence regarding the parties' requests for attorney fees. At the end of the hearing, the court asked the attorney for Stafford and trustee whether he planned to file an attorney-fee petition under

ORCP 68. The attorney agreed that he would. The court then asked petitioner's lawyer whether the court was "going to see [her petition]" with regard to the hearing that day, and she responded affirmatively.

Although no proposed general judgment prepared by counsel for Stafford and trustee appears in the trial court record, such a document must have been sent to petitioner's lawyer, as the record does include petitioner's objection to that proposed general judgment.[3] In any event, the trial court signed a general judgment of dismissal prepared by counsel for petitioner. That judgment, entered on October 7, 2011, provides:

> "This matter came before the Court for hearing on the oral request of Petitioner to dismiss made at the status hearing August 3, 2011. It appearing to Petitioner that the Visitor's Report was well taken, and its recommendations sound, Petitioner reported its findings to the Court and requested adoption of those finding[s] and dismissal of this matter. Counsel for the Stafford Trust, the Respondent and the Successor Trustee, requested a hearing on the matter of attorney fees. Venue and jurisdiction being proper and it appearing to the court from the allegations of the petition,

---

[3] The excerpt of record to trustee's opening brief on appeal includes a copy of his proposed judgment, but we have been unable to locate that document in the electronic trial court file. Nor does the index to the excerpt inform us where we might hope to find that document in the file, as the index asserts only (and apparently incorrectly) that the proposed judgment is in the "Trial Court File," and provides no more specific information. We remind parties appearing in the Oregon appellate courts that an excerpt of record "shall begin with an index organized chronologically, describing each item and identifying *where* the item may be found in the trial court or agency record, and the page where the item may be found in the excerpt." ORAP 5.50(6)(b) (emphasis added). Thus, the index to the excerpt must identify the specific location (*i.e.*, page number) in the trial court file where each item in the excerpt may be found; it is not sufficient to state only that the item may be located somewhere in that file. Although it may seem burdensome to have to review the official trial court file to locate each item to be included in the excerpt, that review has the benefit of revealing, among other things, any need to correct or supplement the record with documents that a party believes should have been included, but were not. *See* ORS 19.365(4) ("When it appears to the appellate court that the record on appeal is erroneous or that the record does not contain material that should have been part of the trial court file, and the erroneous or incomplete record substantially affects the merits of the appeal, on motion of a party or on its own motion the court may make such order to correct or supplement the record as may be just.").

In this case, the content of trustee's proposed judgment does not affect our analysis, so we need not determine whether it is properly before us.

the hearing, the Visitor's Report, and all other records and files herein, that this matter should be and [is] dismissed now:

"THEREFORE, IT IS ORDERED AND ADJUDGED THAT:

"(1) The Petition for Guardianship and Conservatorship is dismissed.

"(2) Neither Darline Stafford nor her estate will pay any attorney fees in this matter. Fees, if sought, will be otherwise allocated.

"(3) Counsel may submit petitions for attorney fees for the Court's review. Petitioner's counsel may submit a Petition for attorney fees for that period from August 3, 2011 to date of Judgment only. Counsel for the other parties may submit a Petition for Attorney fees for that period prior to August 3, 2011.

"(4) Fees will be allocated subsequent to Rule 68 hearing before this court."

Trustee appeals from that general judgment of dismissal.[4]

We begin with trustee's second assignment of error, in which he asserts that the trial court erred by not entering judgment in his favor on his counterclaim. Relying on ORCP 13 B and ORCP 19, trustee argues that he was entitled to judgment on the counterclaim as a matter of law because petitioner did not file a reply to it.[5]

We disagree. A party's failure to file a required responsive pleading does not, without more, entitle the opposing party to judgment on the pleadings under ORCP 21 B. Rather, the propriety of judgment on the pleadings is based on an assessment of the parties' *allegations* in the pleadings, and entry of judgment on that basis is proper only if those allegations "show that the nonmoving party cannot prevail as a matter of law." *Pendergrass v. Fagan*, 218 Or App 533, 537, 180 P3d 110, *rev den*, 344 Or 670 (2008). As

---

[4] Stafford is not a party to this appeal.

[5] ORCP 13 B provides, in part, "There shall be a reply to a counterclaim denominated as such * * *." The pertinent part of ORCP 19 C provides: "Allegations in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted when not denied in the responsive pleading."

noted, trustee did not argue that he was entitled to judgment as a matter of law based on the parties' allegations; rather, he argued that he was entitled to judgment merely because petitioner had not filed a reply to his counterclaim.

Viewed in that light, what trustee sought—as a practical matter—was a default judgment on his counterclaim. Consequently, to obtain a judgment in his favor based on petitioner's failure to reply to the counterclaim, trustee would have been required to comply with the pertinent provisions of ORCP 69, including the requirement to file a motion for order of default "accompanied by an affidavit or declaration to support that default is appropriate." ORCP 69 C(1); *see* ORCP 69 A(2) (the provisions of ORCP 69, relating to default orders and judgments, "apply whether the party entitled to an order of default and judgment by default is a plaintiff, a third party plaintiff, or a party who has pleaded a counterclaim or cross-claim"). Because trustee did not comply with those requirements, the trial court did not err when it declined to enter judgment in his favor on the counterclaim based solely on petitioner's failure to file a responsive pleading.

Trustee's counterclaim also is the focus of his first assignment of error, in which he argues that the trial court erred by entering a general judgment of dismissal that "did not address" his counterclaim. Trustee clarified that claim of error at oral argument, explaining his view that the court erred by entering the general judgment of dismissal because that judgment had the effect of dismissing his counterclaim rather than granting relief on it. Instead, trustee argued, the trial court should have entered judgment in his favor on the counterclaim because that would have been consistent with the court's oral rulings in his favor on the claims for compensation and (at least in part) attorney fees. In response, petitioner points out that trustee's attorney stated at the hearing that he was "okay with the dismissal" and did not alert the trial court that it still needed to resolve the counterclaim. Trustee disputes that characterization of what happened at the hearing, asserting that he agreed only to dismissal of the petition, not to dismissal of the counterclaim for attorney fees and approval of compensation rates. Moreover, he argues, he preserved his first claim of

error by submitting a proposed form of judgment, thus "represent[ing] that [his] proposed form of judgment accurately reflected the court's findings at the hearing, and by implication that [petitioner's] document did not conform to the court's oral rulings." According to trustee, the trial court "could compare the different forms of the two judgments, and avoid the error by choosing the correct form of judgment." Alternatively, trustee argues, entry of the general judgment of dismissal constituted plain error "in light of the court's own findings at the hearing that the relief sought in the counterclaims should be granted at least in part."

We agree with petitioner that trustee did not preserve his claim of error simply by submitting a competing form of proposed judgment. Nothing about that proposed judgment or trustee's other filings or in-court assertions would have alerted the trial court that trustee objected to entry of the general judgment of dismissal *because* it did not grant him affirmative relief on his counterclaim, particularly given petitioner's concession—once he reviewed the court visitor's report—that the requested rates of compensation for trustee and caregiver services were appropriate, essentially rendering that aspect of trustee's counterclaim moot. Because trustee did not argue to the trial court that it was required to enter judgment in his favor on the counterclaim notwithstanding the apparently amicable resolution of the compensation issue, and notwithstanding the court's acknowledgement that the parties would have an opportunity to submit attorney-fee petitions in accordance with ORCP 68, that argument is not preserved for our review.

Trustee's remaining assignments of error challenge those aspects of the general judgment of dismissal that relate to attorney fees. In his third assignment of error, trustee contends that the trial court erred "when it prohibited [him] from paying his attorney fees from assets of the trust." Indeed, the general judgment of dismissal does provide that "[n]either Darline Stafford nor her estate will pay any attorney fees in this matter. Fees, *if sought*, will be otherwise allocated." (Emphasis added.) Trustee's challenge to that provision is based on his claim that he was

entitled to be paid for his services from trust assets for the time he spent "in defense of the settlor, and in defense of the administration of the trust against a collateral attack in a guardianship and conservatorship proceeding ***." In his fourth assignment of error, trustee asserts that the trial court erred by "prohibiting [trustee] from *seeking* an award of attorney fees incurred after the date of the status conference, August 3, 2011." (Emphasis added.) Trustee contends that the trial court impermissibly was punishing him for having offered evidence related to the reasonableness of the compensation sought by trustee and Jeanie Lehman for the services they provided to Stafford.

We cannot reach the arguments that trustee makes in association with his third and fourth assignments of error because the judgment from which he appealed did not resolve *all* issues related to potential awards of attorney fees. As we explained in *Petersen v. Fielder*, 170 Or App 305, 309, 13 P3d 114 (2000), this court can address issues related to attorney fees only on appeal from a judgment that is "final as to the matter of attorney fees," including a determination of any fee amount. In *Petersen*, the trial court entered a general judgment awarding damages to the plaintiffs and providing that the plaintiffs' attorney fees would be determined later, pursuant to ORCP 68 C. The court subsequently entered a supplemental judgment awarding the plaintiffs a specific amount of attorney fees, and the defendants appealed from that judgment, challenging the fee award. The plaintiffs argued that defendants should have challenged the award of attorney fees by appealing from the earlier general judgment. We disagreed:

> "ORCP 68 C(5)(b) defers *any award* of attorney fees to a separate supplemental judgment when *any issue* regarding attorney fees has not been determined before entry of a judgment pursuant to ORCP 67. Thus, an award must resolve all issues regarding attorney fees, including a determination of the specific amount of fees, as well as a determination of entitlement. Because all issues regarding plaintiffs' request for attorney fees were not resolved until the court determined the amount of fees in the supplemental judgment, no final award of fees was made before the trial court entered the supplemental judgment. It follows

that defendants' appeal from the supplemental judgment was not tardy."

*Id.* at 310 (emphasis in original).

We reiterated that holding in *Mathews v. Hutchcraft*, 221 Or App 479, 190 P3d 474 (2008), a case in which the trial court entered a general judgment that denied the appellant relief on the merits of her claim and also imposed sanctions on the appellant in the form of a requirement that she pay the respondent's attorney fees, in an amount to be determined later pursuant to ORCP 68 C. The appellant filed a notice of appeal of that general judgment, but did not appeal a subsequent supplemental judgment awarding the respondent attorney fees. On the appeal from the general judgment, we explained that we could not address the appellant's contention that the trial court had erred by imposing sanctions because it had not satisfied the requirements of ORCP 17 D: "Under *Petersen*, the general judgment was not final [as to the issue of attorney fees and costs] because the amount of attorney fees and costs, if any, to be awarded remained undetermined until the entry of the supplemental judgment." *Id.* at 483. Simply put, "when *any issue* regarding attorney fees or costs remains undetermined at the time of the entry of the general judgment, that judgment is not final, at least as to the matter of attorney fees and costs." *Id.* (emphasis in original). Accordingly, we cannot reach an appellant's arguments regarding attorney fees in an appeal from such a judgment.

Here, the general judgment of dismissal did not resolve all issues regarding attorney fees. To the contrary, the judgment provided that fees would be allocated "subsequent to rule 68 hearing" and specified some parameters that would control any attorney-fee awards that might (or might not) be entered later. Trustee appealed only that general judgment, not any supplemental judgment that might (or might not) later have awarded fees to either party. Accordingly, we cannot address the issues raised in his third and fourth assignments of error, which relate solely to attorney fees that the court contemplated it might award in the future.

Affirmed.